UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| WORLD WRESTLING ENTERTAINMENT, INC. and WWE LIBRARIES, INC., <br><br> Plaintiffs, <br> v. <br><br> AWA WRESTLING ENTERTAINMENT, INC., and DALE R. GAGNER, an individual, a/k/a DALE R. GAGNE, a/k/a DALE GAGNE, <br><br> Defendants. | Civil Action No. ___07-2058 ADM/JSM___ <br><br><br> **COMPLAINT** <br><br> **(JURY TRIAL DEMANDED)** |

Plaintiffs World Wrestling Entertainment, Inc. and WWE Libraries, Inc. ("WWE Libraries") (collectively "WWE"), by and through their undersigned counsel, respectfully submit this Complaint against Defendants AWA Wrestling Entertainment, Inc. and Dale R. Gagner, a/k/a Dale R. Gagne, a/k/a Dale Gagne ("Gagner") (collectively "Defendants").

## NATURE OF THE ACTION

1.     By this action, WWE seeks injunctive relief and monetary damages arising from Defendants' willful infringement and unlawful exploitation of WWE's AMERICAN WRESTLING ASSOCIATION and AWA marks (collectively, the "AWA Marks") in connection with professional wrestling-related activities.

2.     The clear intent of Defendants' activities is to misrepresent that Defendants are the successors to and/or affiliated with the AMERICAN WRESTLING ASSOCIATION or AWA wrestling promotion— a long-time wrestling organization operated out of Minneapolis, Minnesota by the legendary Verne Gagne between approximately 1960 and the 1990's.

SCANNED

APR 2 5 2007

U.S. DISTRICT COURT MPLS

3.     In or around 2003, WWE acquired all right, title and interest in and to the AWA Marks and their associated trademark registrations with the United States Patent and Trademark Office. Since then, WWE has been using the AWA Marks in connection with professional wrestling-related goods and services, including, in particular, the recent release of a home video product entitled, "The Spectacular Legacy of the AWA," which has been distributed throughout the United States, including in this District.

4.     The driving force behind the unlawful conduct described herein has been Defendant Gagner who, on information and belief, is the owner of Defendant AWA Wrestling Entertainment, Inc.

5.     Gagner is a serial infringer. Indeed, this is not the first time that Gagner has been prosecuted for his infringement and unlawful exploitation of the AWA Marks. On April 18, 1990, Minneapolis Boxing & Wrestling Club, Inc., which owned and operated the AWA wrestling promotion and owned the AWA Marks, filed a trademark infringement action against, among others, Defendant Gagner in United States District Court for the District of Minnesota at Docket No. 4:90-cv-00297-HHM-FLM in connection with Gagner's unauthorized use of, *inter alia*, the AWA Marks.

6.     On May 15, 1990, this Court entered an Order preliminarily enjoining Gagner and his accomplices from, *inter alia*, using in any manner the AWA Marks or any colorable imitation of the AWA Marks and making any representation or distributing promotional material likely to cause others to believe he was associated with the professional wrestling promotion known as the AWA. A true and correct copy of the court's preliminary injunction order is attached hereto as Exhibit 1.

7. Specifically, the defendants in that case, including Gagner, were enjoined from:

> (a) using in any manner or in connection with any goods or services the marks AWA, AMERICAN WRESTLING ASSOCIATION, ALL STAR WRESTLING, AWA Design Logo or any colorable imitation of those marks including the phrase "American Wrestling League";

8. On June 16, 1992, this Court entered a final judgment against Gagner on the merits of the trademark infringement action and ordered that the May 15, 1990 preliminary injunction be made permanent. A true and correct copy of this Court's final judgment is attached hereto as Exhibit 2.

9. Flaunting this Court's permanent injunction order, Gagner and his company are again unlawfully exploiting and trading on the goodwill and reputation associated with the AWA Marks.

10. As described herein, Defendants' unlawful conduct constitutes trademark infringement, unfair competition and cybersquatting in violation of the Lanham Act, 15 U.S.C. § 1051, *et. seq.*, and deceptive trade practices in violation of the laws of the State of Minnesota.

## THE PARTIES

11. Plaintiff World Wrestling Entertainment, Inc. is a Delaware corporation having its principal place of business at 1241 East Main Street, Stamford, Connecticut 06902.

12. Plaintiff WWE Libraries is a Delaware corporation having its principal place of business at 1241 East Main Street, Stamford, Connecticut 06902. WWE Libraries is a

3

wholly-owned subsidiary of World Wrestling Entertainment, Inc. and is the owner of record of the AWA Marks.

13. Defendant AWA Wrestling Entertainment, Inc. is a Minnesota corporation having its principal place of business at 4739 - 14th Avenue, NW #4, Rochester, Minnesota 55901.

14. Defendant Gagner is a resident of the State of Minnesota. On information and belief, Gagner is the owner of Defendant AWA Wrestling Entertainment, Inc., which maintains an office at 4739 - 14th Avenue, NW #4, Rochester, Minnesota 55901. Gagner dominates and controls the activities of Defendant AWA Wrestling Entertainment, Inc. and has personally directed and participated in the acts constituting trademark infringement, unfair competition, cybersquatting and deceptive practices complained of herein.

## JURISDICTION AND VENUE

15. This Court has personal jurisdiction over Defendants in this action because they both reside in the District of Minnesota.

16. This Court has original jurisdiction over the subject matter of the claims brought herein under the Lanham Act, 15 U.S.C. § 1051, *et. seq.*, pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction of the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

17. Venue is properly founded in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

## BACKGROUND

### I.    WWE'S BUSINESS OPERATIONS

18.    WWE is an integrated media and entertainment company principally engaged in the development, promotion, and marketing of television programming, pay-per-view programming, and live arena events, and the licensing and sale of branded consumer products featuring its WORLD WRESTLING ENTERTAINMENT brand.

19.    WWE's unique product, for which it coined the term "sports entertainment," is perhaps best described as an action-adventure episodic drama that is akin to an ongoing, ever-developing soap opera based around WWE's distinctive and provocative characters. WWE creates colorful characters that generally appear under a trademarked name and are distinctively delineated with unique persona, history, relationships, music, visual appearance, and behavior.

20.    WWE promotes hundreds of live shows each year in arenas and stadiums in cities around the world. WWE also produces weekly television programs on broadcast and cable television that are distributed around the world and monthly pay-per-view programs available through cable and satellite pay-per-view distributors. In addition, WWE offers a video-on-demand service available through cable distributors and via the Internet of its extensive library of historical footage from WWE and other wrestling promotions. Ancillary to its sports entertainment programming, WWE engages in an extensive licensing program pursuant to which WWE's copyrighted characters, trademarks, service marks and other intellectual property rights are depicted on myriad consumer products, including, *inter alia*, home videos, videogames and action figures.

## II.    THE HISTORY OF THE AWA

21.    The AWA wrestling promotion was established in or around 1960 by Verne Gagne. In addition to co-owing the AWA, Gagne for years was the AWA's biggest star and perennial AWA Heavyweight Champion. In a blatant attempt to trade on the name and popularity of Verne Gagne and Verne Gagne's association with the AWA, Defendant Gagner drops the "r" from his last name to publicly refer to himself as "Gagne." In reality, Defendant Gagner is not related to Verne Gagne in any way and his last name is not "Gagne."

22.    The AWA also was known for promoting such other popular wrestlers as "Crusher Lisowski," "Dick the Bruiser," "Mad Dog Vachon," "Fritz von Erich," and "Nick Bockwinkle."

23.    From in or around 1960 through the 1990's, the AWA promoted professional wrestling exhibitions principally in the Midwestern United States and produced regional televised programming relating to these wrestling exhibitions. Additionally, the AWA aired a weekly television program on ESPN in the 1980's and 1990's.

24.    Beyond the promotion of professional wrestling exhibitions, Gagne actively used and licensed to third parties the AWA's extensive library of archival video footage.

25.    In recognition of these activities, Gagne, through his company Minneapolis Boxing & Wrestling Club, Inc., obtained federal trademark registrations for various marks used and associated with the AWA, including, specifically, (i) AMERICAN WRESTLING ASSOCIATION, United States Registration Number 1,410,887, registered September 23, 1986, for promotion and production of wrestling matches for live events

6

and television based on use of the mark as early as 1960 and (ii) AWA, United States

Registration Number 1,401,633, registered July 15, 1986, for promotion and production

of wrestling matches for live events and television based on use of the mark as early as

1952.

26.    The AWA Marks have achieved incontestable status under 15 U.S.C. § 1065.

27.    As a result of the long-term promotion and popularity of the AWA, the AWA

Marks have become indelibly linked in the public's mind with the AWA's unique and

rich history.  The goodwill associated with the AWA Marks is invaluable.

## III.    WWE'S ACQUISITION OF THE AWA MARKS

28.    WWE owns an extensive library of video footage of historical wrestling

programs.  In addition to video footage of its own programming (and that of its

predecessors, World Wrestling Federation and World Wide Wrestling Federation), WWE

has invested considerable resources to acquire the archival video footage of other

wrestling promotions.  WWE has exploited these valuable assets by, among other things,

(i) launching a video-on-demand service; (ii) releasing home video products; (iii)

incorporating the footage into WWE's weekly programming; and (iv) using the footage

to produce new television programming.

29.    As part of these efforts, WWE acquired the archival video footage and other

intellectual property assets associated with the AWA.

30.    Pursuant to an Asset Purchase Agreement dated January 31, 2003, WWE

obtained all intellectual property associated with the AWA, including, *inter alia*, the

entire film library and all trademarks and service marks associated with the AWA.

31.   Specifically, Paragraph 1(a)(i) of the Asset Purchase Agreement provided that WWE purchased and obtained:

> Any and all intellectual property owned by Seller or used by Seller in connection with its professional wrestling business including without limitation **the names "American Wrestling Association", "AWA"**, "Wrestling Entertainment Worldwide", "WEW", "All Star Wrestling", and **any variants thereof, any logos**, program and pay-per-view names, character names, talent names, likenesses, rights of publicity, trade secrets, **internet domain names**, the entire library of Footage, still photographs, recordings, copyrights, copyright applications and registrations, **trademarks, trade dress, service marks, trademarks and service mark applications**...; **and the goodwill of Seller associated with such intellectual property, including any claims in respect of past infringements and similar claims relating thereto**....

(emphasis added).

32.   In conjunction with the Asset Purchase Agreement, WWE Libraries was assigned all rights, title and interest in the AWA Marks, including the federal trademark registrations for such marks, together with the goodwill of the business symbolized by the AWA Marks.  As a matter of law, therefore, WWE Libraries is the exclusive owner of the incontestable AWA Marks and has exclusive legal authority to control the use of the AWA Marks.

33.   Since its acquisition of the AWA Marks, WWE has expended considerable resources in continuing to develop, promote and otherwise build goodwill in the AWA Marks.  In particular, in or around 2006, WWE released the home video product entitled "The Spectacular Legacy of the AWA."  In addition, WWE has marketed and promoted the AWA Marks by airing footage of historical AWA wrestling matches through its cable on-demand service, known as "WWE 24/7," and through its www.wwe.com website.

34.  As a result of WWE's efforts and the inherent goodwill long associated with the AWA Marks, the AWA Marks are highly recognized by consumers in association with the AWA wrestling promotion.

## IV.  DEFENDANTS' UNLAWFUL CONDUCT

35.  As described above, based on his prior acts of infringement, Gagner is subject to a permanent injunction prohibiting him from using the AWA Marks in connection with promoting or providing wrestling performances and events.

36.  In the face of this Court's prior ruling, Gagner and his company, AWA Wrestling Entertainment, Inc., now own and operate Internet websites at www.awastars.com and www.myspace.com/awastars which, in blatant disregard of this Court's Orders and in violation of WWE's exclusive rights in the AWA Marks, extensively use the AWA Marks in connection with Defendants' wrestling-related activities.

37.  Specifically, Defendants continue to unlawfully exploit and trade on the goodwill associated with the AWA Marks by, among other things, (i) doing business under the name "American Wrestling Association" and/or "AWA Wrestling Entertainment, Inc.;" (ii) selling merchandise, including hats and t-shirts, featuring the AWA Marks; (iii) promoting wrestling activities, performances and events using the AWA Marks; (iv) presenting information relating to the historical AWA wrestling promotion; and (v) displaying images on its website at www.awastars.com of wrestlers formerly associated with the AWA wrestling promotion.  The clear intent of Defendants' activities is to misrepresent that Defendants are the successors to and/or affiliated with

the AWA wrestling promotion. At no time have Defendants, individually or collectively, been affiliated with WWE or the AWA wrestling promotion.

38. Upon information and belief, in addition to Defendants' unlawful use of WWE's AWA Marks in its business name and on its websites at www.awastars.com and www.myspace.com/awastars, Defendants have been licensing, selling and/or otherwise purporting to authorize third parties to use the AWA Marks in connection with promoting and providing wrestling activities, performances and events throughout the United States. At no time has WWE or any predecessors-in-interest to the AWA Marks given Defendants, individually or collectively, a license or other form of express or implied approval or consent for Defendants' unlawful use of the AWA marks.

39. Accordingly, Defendants have unlawfully infringed and continue to unlawfully infringe WWE's AWA Marks by using trademarks and service marks belonging exclusively to WWE as a means to promote Defendants' business.

40. Further, Defendants' unlawful use of WWE's AWA Marks is clearly willful given that Defendants' use of the AWA Marks is in direct violation of this Court's permanent injunction prohibiting Gagner from using the AWA Marks.

## V.    THE IRREPARABLE HARM SUFFERED BY WWE

41. As a result of Defendants' previous and ongoing violations of WWE's rights in the AWA Marks, WWE has been, and continues to be, irreparably harmed.

42. WWE has lost its exclusive right and ability to control and/or determine the manner, appearance, timing, location, content and image of the AWA Marks, in which WWE has invested considerable resources to acquire, develop and promote.

43.   Conversely, Defendants have, and continue to, unlawfully and unjustly benefit from its misappropriation and exploitation of WWE's AWA Marks without WWE's approval and/or consent.

44.   Because of Defendants' ongoing and continuous violations of WWE's rights in the AWA Marks, WWE seeks a permanent injunction from this Court enjoining Defendants from using, exploiting or in any way trading on WWE's AWA Marks. Separately, WWE seeks to recover damages, including, but not limited to, a disgorgement of Defendants' profits, arising from Defendants' violations of WWE's intellectual property rights.

**COUNT I**
**Trademark Infringement Under Section 32 of the Lanham Act**

45.   WWE repeats and re-alleges the allegations set forth in paragraphs 1 through 44 above as if fully set forth herein.

46.   WWE—through its wholly-owned subsidiary WWE Libraries— is the owner of the AWA Marks.  WWE has complied in all respects with the Lanham Act and all other laws governing trademarks and secured the exclusive right and privilege in and to the AWA Marks, which are incontestable under 15 U.S.C. § 1065.

47.   Defendants' unauthorized use of the AWA Marks in connection with Defendants' business activities is likely to create confusion as to the source, sponsorship, affiliation, or endorsement of Defendants' business activities in violation of Section 32 of the Lanham Act.

48.   Defendants' unauthorized use of the AWA Marks in connection with

Defendants' business activities was willful, intentional, and undertaken in a deliberate effort to cause confusion and mistake among the consuming public as to the source, affiliation and/or sponsorship of such business activities, and to gain for Defendants the benefit of the enormous goodwill associated with the AWA Marks.

49.   Defendants' unauthorized use of the AWA Marks constitutes willful trademark infringement in violation of Section 32 of the Lanham Act.

50.   The threat of the loss of WWE's right to control and exploit the use of its AWA Marks and the substantial reputation, goodwill, and indelible association with WWE of its services and goods is real and substantial.

51.   Defendants' misconduct has injured WWE in an amount to be determined at trial. Defendants' misconduct also has caused and will continue to cause irreparable injury to WWE, for which WWE has no adequate remedy at law.

## COUNT II
## Unfair Competition Under Section 43(a) of the Lanham Act

52.   WWE repeats and re-alleges the allegations set forth in paragraphs 1 through 44 above as if fully set forth herein.

53.   WWE—through its wholly-owned subsidiary WWE Libraries—is the owner of federally-registered and common law trademark rights in the AWA Marks and related designs and logos.

54.   Defendants' unauthorized use of the AWA Marks and/or other words, terms, names, symbols or devices, or any combination thereof, false designation of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact in

connection with Defendants' business activities is likely to create confusion as to the source, sponsorship, affiliation, or endorsement of Defendants' business activities in violation of § 43(a) of the Lanham Act.

55.   Defendants' unauthorized use of the AWA Marks in connection with Defendants' business activities was willful, intentional, and undertaken in a deliberate effort to cause confusion and mistake among the consuming public as to the source, affiliation and/or sponsorship of such business activities, and to gain for Defendants the benefit of the enormous goodwill associated with the AWA Marks.

56.   The threat of the loss of WWE's right to control and exploit the use of its AWA Marks and the substantial reputation, goodwill, and indelible association with WWE of its services and goods is real and substantial.

57.   Defendants' misconduct has injured WWE in an amount to be determined at trial. Defendants' misconduct also has caused and will continue to cause irreparable injury to WWE, for which WWE has no adequate remedy at law.

## COUNT III
## Cybersquatting under Section 43(d) of the Lanham Act

58.   WWE repeats and re-alleges the allegations set forth in paragraphs 1 through 44 above as if fully set forth herein.

59.   WWE— through its wholly-owned subsidiary WWE Libraries— is the owner of the distinctive "AWA" mark. The "AWA" mark was distinctive at the time Defendants registered the confusingly similar domain name www.awastars.com.

60.   Defendants had and continue to have a bad faith intent to profit from the

13

distinctive "AWA" mark.

61.  Defendants' domain name www.awastars.com incorporates WWE's registered and incontestable "AWA" mark in its entirety.

62.  Defendants' motivation for using the confusingly similar domain name is to usurp and trade on the goodwill of the "AWA" mark by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of their website in violation of § 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

63.  Among other things, Defendants seek, in bad faith, to capitalize on and profit from misdirecting to their website Internet users searching for information relating to the AWA wrestling promotion.

64.  Defendants' use of WWE's "AWA" mark in their www.awastars.com domain name is a violation of the Anticybersquatting Protection Act of the Lanham Act, 15 U.S.C. § 1125(d).

65.  Defendants' misconduct has injured WWE in an amount to be determined at trial.  Defendants' misconduct also has caused and will continue to cause irreparable injury to WWE, for which WWE has no adequate remedy at law.

## COUNT IV
## Deceptive Trade Practices Under Minnesota Law

66.  WWE repeats and re-alleges the allegations set forth in paragraphs 1 through 44 above as if fully set forth herein.

67.  Defendants' conduct in the course of their business described herein, including but not limited to Defendants' willful acts of trademark infringement, all of

which occurred at least in part in the state of Minnesota, violates the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44.

68.     The threat of the loss of WWE's right to control and exploit the use of its AWA Marks and the substantial reputation, goodwill, and indelible association with WWE of its services and goods is real and substantial.

69.     Defendants' misconduct has injured WWE in an amount to be determined at trial. Defendants' misconduct also has caused and will continue to cause irreparable injury to WWE, for which WWE has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE,** WWE respectfully requests that this Court award WWE the following relief:

1.     A permanent injunction enjoining and restraining Defendants and each of his, her or their partners, associates, agents, representatives, servants, employees, successors and assigns, and all others acting in concert therewith or having knowledge thereof, from in any way using, exploiting, or trading on WWE's AWA Marks or any derivations or colorable imitations thereof.

2.     A permanent injunction enjoining and restraining Defendants and each of his, her or their partners, associates, agents, representatives, servants, employees, successors and assigns, and all others acting in concert therewith or having knowledge thereof, from engaging in any other activity constituting unfair competition with WWE, or constituting an infringement of any of the AWA Marks or of WWE's rights in, or its right to use or exploit such marks.

3. A permanent injunction enjoining Defendants from any use of the

www.awastars.com domain name or any domain name confusingly similar to the AWA

Marks.

4. A judgment compelling Defendants to transfer ownership in the

www.awastars.com domain name to WWE or, in the alternative, for cancellation of the

domain name.

5. All damages sustained by WWE as a result of Defendants' wrongful acts,

trebled as permitted under the Lanham Act.

6. An accounting and disgorgement of Defendants' profits from their unlawful

conduct.

7. WWE's costs and attorneys' fees and expenses, together with prejudgment

interest.

8. All such other and further relief as this Court deems just and appropriate.

Dated: April 25, 2007

DORSEY & WHITNEY LLP

By:

J. Thomas Vitt  (#0183817)
Surya Saxena  (#339465)
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402-1498
Telephone:  612-340-2600
Facsimile:  612-340-2868

*Attorneys for Plaintiffs*
*World Wrestling Entertainment, Inc. and*
*WWE Libraries, Inc.*

Of Counsel:

Jerry S. McDevitt
Curtis B. Krasik
Christopher M. Verdini
Kirkpatrick & Lockhard Preston
  Gates Ellis LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222
Telephone:  412-355-6500
Facsimile:  412-355-6501


DORSEY & WHITNEY LLP

April 25, 2007

**SURYA SAXENA**
(612) 492-6125
FAX (612) 340-2807
saxena.surya@dorsey.com

*CC*
*104195*

Clerk of Court
U.S. District Court of Minnesota
202 U.S. Courthouse
300 S. 4th St.
Minneapolis, MN 55415

**VIA MESSENGER**

Re:    *World Wrestling Entertainment, Inc. and WWE Libraries, Inc. v. AWA Wrestling
Entertainment, Inc., and Dale R. Gagner, a/k/a Dale R. Gagne, a/k/a Dale Gagne
Court File No. _____*

Dear Clerk of Court:

Enclosed for filing in the above-named matter are the following documents:

1)    Civil Cover Sheet;

2)    Summons;

3)    Complaint; and

4)    Filing fee check in the amount of $350.00.

**RECEIVED**

APR 2 5 2007

CLERK
U.S. DISTRICT COURT
MINNEAPOLIS MINNESOTA

Upon receipt of the court-stamped Summons, service on the Defendants will be
attempted. When the Complaint has been served, an Affidavit of Service will be filed with the
Court.

Sincerely,

Surya Saxena

SS:dkh

Enclosures

cc:    J. Thomas Vitt

DORSEY & WHITNEY LLP · WWW.DORSEY.COM · **T** 612.340.2600 · **F** 612.340.2868
SUITE 1500 · 50 SOUTH SIXTH STREET · MINNEAPOLIS, MINNESOTA 55402-1498

USA   CANADA   EUROPE   ASIA