## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

World Wrestling Entertainment, Inc. and
WWE Libraries, Inc.,

                   Plaintiffs,                            **MEMORANDUM OPINION AND ORDER**

      v.                                        Civil No. 07-2058 ADM/JSM

AWA Wrestling Entertainment, Inc., and
Dale R. Gagner, an individual, a/k/a Dale R.
Gagne, a/k/a Dale Gagne,

                   Defendants.

_____

Surya Saxena, Esq., Dorsey & Whitney, L.L.P., Minneapolis, MN and Curtis B. Krasik, Esq.,
Kirkpatrick & Lockhart Preston Gates Ellis, L.L.P., Pittsburgh, P.A., argued on behalf of
Plaintiffs.

Dale R. Gagner, *pro se*.

_____

## I. INTRODUCTION

On September 24, 2008, the undersigned United States District Judge heard oral

argument on the Motion for Summary Judgment of Plaintiffs World Wrestling Entertainment,

Inc. and WWE Libraries, Inc. (collectively "Plaintiffs") [Docket No. 59].  Plaintiffs assert claims

of trademark infringement, unfair competition, and cybersquating under federal law, as well as

claims of deceptive trade practices under Minnesota law.  Compl. [Docket No. 1] ¶¶ 45-69.

Defendant[1] Dale R. Gagner ("Gagner") did not file any written response to Plaintiffs' Motion for

Summary Judgment, however, he did appear and argue at oral argument.  For the reasons set

forth below, Plaintiffs' Motion for Summary Judgment is granted.

_____

[1] Previously, the Court ordered entry of default judgment against Defendant AWA
Wrestling Entertainment, Inc. [Docket No. 46] after the company failed to plead or otherwise
defend in this action.

## II. BACKGROUND

The American Wrestling Association ("AWA") was a wrestling promotion organization founded in the late 1950s by Verne Gagne. Gagne Decl. [Docket No. 62] ¶ 3. From its inception until the 1990s, the AWA promoted professional wrestling exhibitions throughout the Midwest and produced televised programming through Minneapolis Boxing & Wrestling Club, Inc. ("MBW"), which was also owned by Verne Gagne. Id. ¶ 6; Compl. ¶ 23. Additionally, the AWA actively used and licensed to third parties an extensive library of archival wrestling video footage. Gagne Decl. ¶ 8.

Verne Gagne obtained (through MBW and another company that he owned, Squared Circle Ventures, Inc.) federal trademark registrations for various marks used and associated with the AWA, including: (1) American Wrestling Association, United States Registration Number 1,410,887, registered on September 23, 1986, for promotion and production of wrestling matches for live events and television based on use of the mark as early as 1960 and (2) AWA, United States Registration Number 1,401,633, registered on July 15, 1986, for promotion and production of wrestling matches for live events and television based on use of the mark as early as 1952. Compl. ¶ 25; Verdini Decl. [Docket No. 66] Exs. 2, 3. These marks (collectively the "AWA marks") acquired incontestable status in 1992. Compl. ¶ 26; Verdini Decl. Exs. 4, 5.

Gagner worked for MBW from approximately 1988 to 1990 selling live events, organizing shows in different cities across the country, arranging air travel for performers, and distributing compensation to the performers on the day of the show. Gagne Decl. Ex 1 (Gagner Depo.) at 14-18. During that time, MBW promoted shows under the names American Wrestling Association and AWA Championship Wrestling. Id. at 16. Gagner's employment with MBW

ended in January 1990 when MBW learned that Gagner had conducted a wrestling event as an

AWA event without the knowledge, participation, or consent of MBW.  Gagne Decl. ¶ 11.  As a

result of this incident, MBW filed a trademark infringement action in the United States District

Court for the District of Minnesota, and an order was issued in June 1990, permanently enjoining

Gagner from, *inter alia*, (1) using the AWA marks, AWA Design Logo, or any colorable

imitation thereof and (2) making any representation or distributing any promotional material

likely to cause others to believe that Gagner or his businesses are in any manner associated with

the AWA.  Verdini Decl. Ex. 6.

In early 2003, Plaintiffs acquired ownership of the AWA marks, as well as certain

archival video footage owned by Verne Gagne and his various companies.  Langham Decl.

[Docket No. 65] ¶¶ 4-5, Ex. 1.  The asset purchase agreement memorializing that transaction

defines the intellectual property that Plaintiffs acquired as:

> Any and all intellectual property owned by Seller or used by Seller
> in connection with its professional wrestling business including
> without limitation the names "American Wrestling Association",
> "AWA", . . . and any variants thereof, any logos, . . . character names,
> talent names, likenesses, rights of publicity, . . . internet domain
> names, . . . trademarks, . . . and the goodwill . . . associated with such
> intellectual property, including any claims in respect of past
> infringements . . . .

Id.  Since acquiring the AWA marks, Plaintiffs have continued to develop and promote the

goodwill in the AWA marks.  Kaufman Decl. [Docket No. 63] ¶ 13.  In particular, Plaintiffs

released for sale a home video entitled "The Spectacular Legacy of the AWA" in 2006 and have

marketed and promoted the AWA marks by airing historical AWA footage on cable television.

Id. ¶ 14.

After acquiring the AWA marks, Plaintiffs learned that Gagner had allegedly been

infringing on the AWA marks.  Id. ¶ 16.  Plaintiffs allege that Gagner has (1) operated Internet

websites that infringe on the AWA marks by virtue of their names (www.awastars.com and

www.myspace/awastars.com) and their extensive use of the AWA marks; (2) unlawfully

exploited and traded on the goodwill associated with the AWA marks by doing business under

the name American Wrestling Association and AWA Wrestling Entertainment, Inc., selling

merchandise featuring the AWA marks, promoting wrestling events using the AWA marks, and

displaying images of wrestlers formerly associated with the AWA[2]; and (3) unlawfully licensed,

sanctioned, or otherwise purported to authorize third parties to use the AWA marks in

connection with wrestling activities and promotions throughout North America in exchange for a

fee.  See Compl. ¶¶ 36-39; Gagner Depo. 83-86.  Plaintiffs initiated this action, asserting that

Gagner's alleged activity constitutes trademark infringement, unfair competition, cybersquating,

and deceptive trade practices.  Compl. 11-15.  Plaintiffs seek summary judgment.

### III. DISCUSSION

A.      **Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the

---

[2] The wrestlers depicted on Gagner's website include, among others, Verne Gagne, "Crusher Lisowski," "Dick the Bruiser," "Mad Dog Vachon," "Nick Bockwinkel," and "Baron Von Raschke."  Gagner Depo. 87-89, Ex. 11.

evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465,

470 (8th Cir. 1995).  The nonmoving party may not "rest on mere allegations or denials, but

must demonstrate on the record the existence of specific facts which create a genuine issue for

trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.      Trademark Infringement, Unfair Competition, and Deceptive Trade Practices**

Plaintiffs Complaint alleges claims under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a),

and the Deceptive Trade Practices Act, Minn. Stat. § 325D.44.  The evaluation of Plaintiffs' state

law claims require the same analysis as their claims under the Lanham Act, and, therefore, the

Court analyzes these claims together, using the same standards.  See DaimlerChrysler AG v.

Bloom, 315 F.3d 932, 936, n.3 (8th Cir. 2003).  To prevail on their claims for trademark

infringement and unfair competition under the Lanham Act, Plaintiffs must prove (1) that they

own a valid, distinctive trademark and (2) a likelihood of confusion between the registered mark

and the alleged infringing use by Gagner.[3]  See First Bank v. First Bank Sys., Inc., 84 F.3d

1040,1044 (8th Cir. 1996).

**1.      Ownership of a Valid and Distinctive Trademark**

Registration of a trademark is prima facie evidence of the validity of the mark.  See 15

U.S.C. § 1057.  In addition, registered trademarks "are presumed to be distinctive."  Aromatique,

Inc. v. Golden Seal, Inc., 28 F.3d 863, 869 (8th 1994).  When a trademark meets certain

requirements, primarily continuous use for five years after registration, it becomes incontestable.

---

[3] Trademark-infringement claims and unfair-competition claims under the Lanham Act
are both subject to this two-part test.  See Jeld-Wen, Inc. v. Dalco Indus., Inc., No. 99-1005,
1999 WL 1024002, at *2 (8th Cir. Nov. 10, 1999) (citing Hubbard Feeds, Inc. v. Animal Feed
Supplement, Inc., 182 F.3d 598, 601 (8th Cir. 1999)); Eniva Corp. v. Global Water Solutions,
Inc., 440 F. Supp. 2d 1042, 1049, n.3 (D. Minn. 2006).

See 15 U.S.C. § 1065.  And the fact that a registered trademark has achieved incontestable status

is conclusive evidence of the mark's validity, its registration, the registrant's ownership, and the

registrant's exclusive right to use the mark in commerce.  See 15 U.S.C. § 1115(b); Hubbard

Feeds, 182 F.3d at 600 n.2.

Here, Plaintiffs have offered evidence that the AWA marks are federally registered and

have achieved incontestable status.  Gagner has presented no evidence to the contrary.  Based on

his statements at oral argument, however, it appears that Gagner believes that because he was

permitted to incorporate, under Minnesota state law, a business named "AWA Wrestling

Entertainment, Inc.," he (or AWA Wrestling Entertainment, Inc.) acquired the rights to the AWA

marks.  Gagner's position is without merit.  See Richardson v. Comm'r of Internal Revenue.,

509 F.3d 736, 743 (6th Cir. 2007) ("[A] valid registration of a name of incorporation under state

law does not innoculate it from challenge under the federal trademark laws . . . .").

Given the undisputed evidence that the AWA marks are federally registered and have

achieved incontestable status, there are no issues of fact and the Court finds that the AWA marks

are valid and distinctive.

### 2.      Likelihood of Confusion

The likelihood of customer confusion is the "'hallmark of any trademark infringement

claim.'" Northland Ins. Cos. v. Blaylock, 115 F. Supp. 2d 1108, 1117 (D. Minn. 2000) (quoting

Polymer Tech. Corp. v. Mimran, 37 F.3d 74, 80 (2d Cir. 1994)).  In evaluating whether a

likelihood of confusion exists, the Court considers the following factors: (1) the strength of the

owner's mark; (2) the similarity between the owner's mark and the alleged infringer's mark; (3)

the degree to which the products compete with each other; (4) the alleged infringer's intent to

"pass off" its own goods as those of the trademark owner; (5) incidents of actual confusion; and (6) whether the degree of care exercised by a consumer can eliminate a likelihood of confusion that would otherwise exist.  Hubbard Feeds, 182 F.3d at 602; see also SquirtCo v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980). "These factors do not operate in a mathematically precise formula; rather, [courts] use them at the summary judgment stage as a guide to determine whether a reasonable jury could find a likelihood of confusion." Duluth New-Tribune v. Mesaba Publ'g Co., 84 F.3d 1093, 1096 (8th Cir. 1996).  "[N]o one factor controls, and because the inquiry is inherently case-specific, different factors may be entitled to more weight in different cases." Kemp v. Bumble Bee Seafoods, Inc., 398 F.3d 1049, 1054 (8th Cir. 2005).

### a.      Strength of the Mark

Plaintiffs assert that as a result of the promotion and popularity of the AWA since its inception nearly fifty years ago, the AWA marks "have become indelibly linked in the public's mind with the AWA's unique and rich history" and that the goodwill associated with the AWA marks is invaluable.  Compl. ¶ 27.  Plaintiffs argue that the AWA marks are therefore strong because they have been "used in commerce in connection with wrestling entertainment services for almost fifty years . . ., have been federally registered for over twenty years . . .[,] and were used in connection with a daily and/or weekly cable television program that was broadcast across the United States."  Pls.' Mem. in Supp. Mot. for Summ. J. [Docket No. 61] at 23.  Gagner has introduced no evidence to create a genuine issue of fact regarding Plaintiffs' assertion that the AWA marks are strong.  Accordingly, the strength of the marks has been established and this factor weighs in favor the likelihood of confusion.

### b.      Similarity of the Marks

Plaintiffs assert that the marks used by Gagner—namely, AWA, American Wrestling Association, AWA Wrestling Entertainment, Inc., and AWA Worldwide—are virtually identical to the AWA marks.  Again, Gagner has offered no evidence to rebut this assertion.  Faced with such undisputed evidence in the record, therefore, the Court finds that this factor also weighs in favor of the likelihood of confusion.  See Davis v. Walt Disney Co., 430 F.3d 901, 903-04 (8th Cir. 2005) (holding that the use of a mark that is "almost identical" to the owner's mark weighs in favor of a finding of a likelihood of confusion).

### c.      Degree of Competition

Plaintiffs have used the AWA marks in connections with their airing of historical footage of AWA wrestling matches on cable television and production and marketing of a home video entitled "The Spectacular Legacy of the AWA."  Kaufman Decl. ¶¶ 13-14.  Gagner has used the AWA marks and variations thereof in connection with his websites www.awastars.com and www.myspace.com/awastars and his sanctioning and promotion of various wrestling events. There is nothing in the record to suggest that the products and services of Plaintiffs and those of Gagner, both of which relate to the production and promotion of professional wrestling, are not engaged in direct competition with each other.  The degree of competition, therefore, weighs in favor of the likelihood of confusion.

### d.      Intent to "Pass Off"

Although intent is not an element of a claim for trademark infringement, "[i]ntent on the part of the alleged infringor to pass off its goods as the product of another raises an inference of likelihood of confusion."  SquirtCo, 628 F.2d at 1091.  Plaintiffs point out, and the Court agrees,

that because Gagner was previously enjoined from infringing on the AWA marks in 1990,

establishes that he had prior knowledge of the AWA marks and an intent to mislead consumers

and trade on the goodwill connected with the AWA marks. See Insty*Bit, Inc. v. Poly-Tech

Indus., Inc., 95 F.3d 663, 671 (8th Cir. 1996) (holding that evidence of a prior relationship

provides evidence of the alleged infringer's intent to trade on the plaintiff's goodwill). Given no

evidence Gagner's intent was otherwise, this factor weighs in favor of the likelihood of

confusion.

###### e.    Incidents of Actual Confusion

Proof of incidents of actual confusion is not essential to a trademark-infringement claim,

"although it is positive proof of likelihood of confusion." SquirtCo, 628 F.2d at 1091. There is

no evidence in the record of actual confusion, "[h]owever, failure to meet this factor is not

dispositive of a finding of likelihood of confusion." Faegre & Benson, LLP v. Purdy, 447 F.

Supp. 2d 1008, 1016 (D. Minn. 2006). This factor does not weigh for or against either party on

the likelihood of confusion.

###### f.    Degree of Purchaser Care

The final factor considers whether the degree of purchaser care can eliminate any

likelihood of confusion that would otherwise exist. Plaintiffs' allegations of infringement

include Gagner's use the AWA marks on his websites, www.awastars.com and

www.myspace.com/awastars. The courts have recognized that "[b]ecause of the nature of the

internet, consumers are unlikely to avoid confusion even through the exercise of due care." Id.

at 1016. "Because it takes little effort to enter a web site, usually one click from a search

engine's list, consumers 'are more likely to be confused as to the ownership of a web site than

traditional patrons of a brick-and-mortar store would be of a store's ownership.'" Id. (quoting

Coca-Cola Co. v. Purdy, No. 02-1782 ADM/JGL, 2005 WL 212797, at *3 (D. Minn. Jan. 28,

2005)).  Because the domain name of Gagner's website is simply a variation of the AWA marks,

the final factor weighs in favor of a likelihood of confusion.

  In sum, there are no triable fact issues regarding (1) the validity and distinctiveness of the

AWA marks or (2) whether the listed factors weigh in favor of (or are neutral on) the issue of the

likelihood of confusion.  As such, the Court grants summary judgment in favor of Plaintiffs on

their claims for trademark infringement and unfair competition under the Lanham Act and their

claim for deceptive trade practices under Minnesota law.

**C.**   **Cybersquating**

  Plaintiffs argue that they are also entitled to summary judgment on their claim under the

Anticybersquating Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).  To establish such

a claim, a plaintiff must show that (1) the alleged infringor registers, traffics in, or uses a domain

name that is identical or confusingly similar to the plaintiff's mark; (2) the plaintiff's mark was

distinctive or famous when the alleged infringor registered the domain name; and (3) the alleged

infringor had a bad faith intent to profit from the plaintiff's mark.  See 15 U.S.C. §

1125(d)(1)(A); see also Coca-Cola Co. v. Purdy, 382 F.3d 774, 782-84 (8th Cir. 2004).  As

previously discussed, undisputed evidence in the record demonstrates that the AWA marks are

distinctive.  Thus, only the first and third elements remain—that is, whether Gagner's domain

names are identical or confusingly similar to the AWA marks and whether Gagner had a bad

faith intent to profit from the AWA marks.

  In answering the first question, a court compares the challenged domain names and the

plaintiff's mark. Coca-Cola, 382 F.3d at 783. The Eighth Circuit has stated that when an

infringor merely adds "generic terms" to a plaintiff's mark, the resulting domain name is

"confusingly similar, if not identical, to the [plaintiff's] mark." Id. The court concluded,

therefore, that domain names such as drinkcoke.org, mycoca-cola.com, and mymcdonalds.com

were confusingly similar to the Coke and McDonald's marks. Id. Like in Coca-Cola, the

challenged domain names here merely consist of the addition of a generic term—"stars"—to a

protected mark. There are no triable issues of fact regarding whether the domain names are

confusingly similar to the AWA marks.

With regard to the third element of Plaintiffs' ACPA claim, there are numerous,

nonexclusive factors that are considered in determining whether a defendant has acted with bad

faith intent. 15 U.S.C. § 1125(d)(1)(B)(i). The undisputed evidence shows that an evaluation of

several of the factors weigh in favor of finding that Gagner had a bad faith intent to profit from

the AWA marks in registering and using domain names that incorporate those marks. In

particular, there is no evidence suggesting that Gagner has any trademark or other intellectual

property rights in the domain names at issue (factor I); the domain names do not contain any

name by which Gagner is known (factor II); Gagner's use of the AWA marks in the sites

accessible under the offending domain names is entirely commercial and thus has no

noncommercial or fair use (factor IV); and there has been nothing offered to dispute that the

domain names and Gagner's use of the AWA marks demonstrates an intent to lead consumers

searching for information regarding the AWA to Gagner's website and that there is a likelihood

that such consumers would believe that the website is owned, sponsored, or affiliated with the

rightful owner of the AWA marks (factor V). See id. Additionally, the record is devoid of

evidence that would support a determination that Gagner did not have such a bad faith intent.

Therefore, the Court finds that there are no triable fact issues regarding Plaintiffs' ACPA claim

and that Plaintiffs are entitled to summary judgment on that claim.

**D.      Civil Contempt**

Finally, in their Motion for Summary Judgment, Plaintiffs maintain that "Gagner should

also be held in contempt for his continued violations of [the 1990] permanent injunction

enjoining him from any use of the AWA [m]arks."  Pls.' Mem. in Supp. Mot. for Summ. J. at 14-

15.  Given the considerable length of time since the injunction was put in place, the fact that no

formal motion for an order to show cause has been made, and the fact that the parties did not

address the contempt issue at oral argument, the Court believes that a finding of civil contempt is

not warranted at this time.  Should Gagner fail to comply with this Order, Plaintiffs may renew

their request for a finding of contempt.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.  Plaintiffs' Motion for Summary Judgment [Docket No. 59] is **GRANTED**;

2.  Gagner and his partners, associates, agents, representatives, servants, employees,

successor and assigns, and all others acting in concert therewith or having knowledge thereof are

permanently prohibited and enjoined from infringing on any of the AWA marks or Plaintiffs'

rights therein, including, but not limited to, in any way, using, exploiting, or trading on the AWA

marks or any derivations or colorable imitations thereof;

3.  Gagner and his partners, associates, agents, representatives, servants, employees,

successor and assigns, and all others acting in concert therewith or having knowledge thereof are

permanently prohibited and enjoined from registering, using, owning, holding in any way, or

trafficking in the www.awastars.com and www.myspace.com/awastars domain names or any

other domain names that are identical or confusingly similar to the AWA marks;

4.  Gagner shall forthwith advise all domain name registrars he has previously or

currently employed of this Order and instruct them to take all actions necessary to stop the

functioning of the domain names listed in paragraph 3 and shall instruct all such domain name

registrars to cooperate in the transfer of such domain names to Plaintiffs as specified in

paragraph 5 below;

5.  Gagner shall transfer to Plaintiffs within three days the ownership of the domain

names listed in paragraph 3; and

6.  Gagner shall, within ten days from the date of this Order, file a report with the Court

and provide a copy to Plaintiffs, setting forth the manner in which he has complied with the

terms of this Order.

BY THE COURT:


     s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: October 21, 2008.