UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| WORLD WRESTLING ENTERTAINMENT, INC. and WWE PROPERTIES INTERNATIONAL, INC. (as successor in interest to WWE LIBRARIES, INC.)<br><br>Plaintiffs,<br><br>v.<br><br>AWA WRESTLING ENTERTAINMENT, INC., and DALE R. GAGNER, an individual, a/k/a DALE R. GAGNE, a/k/a DALE GAGNE<br><br>Defendants. | Civil Action No. 0:07-cv-02058-ADM/JSM<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A RULE TO SHOW <u>CAUSE</u>** |

Plaintiffs World Wrestling Entertainment, Inc. and WWE Properties International, Inc. ("WWE International"), as successor in interest to WWE Libraries, Inc. ("WWE Libraries") (collectively "WWE"),[1] hereby submit this Memorandum of Law in Support of Plaintiffs' Motion for a Rule to Show Cause why Defendant Dale R. Gagner ("Gagner") should not be held in civil contempt for his violations of  this Court's December 18, 2008 Final Judgment permanently enjoining Gagner from, among other things, using WWE's AWA and AMERICAN WRESTLING ASSOCIATION marks or any colorable imitations thereof (Dkt. 75).

---

[1] On August 30, 2011, WWE Libraries merged into WWE International.  Through the merger, WWE International acquired all of WWE Libraries' marks and the common law rights and goodwill associated therewith, including the marks at issue here.  *See* Declaration of Christopher M. Verdini ("Verdini Decl.") at Ex. 1.

## I.   __INTRODUCTION__

Gagner is a serial trademark infringer who has been found liable in two separate lawsuits for unlawfully infringing the federally-registered AWA (U.S. Reg. No. 1,401,633) and AMERICAN WRESTLING ASSOCIATION (U.S. Reg. No. 1,410,887) marks (collectively, the "AWA Marks") long associated with the Minnesota-based AWA wrestling promotion.  In the first lawsuit (Civil Action No. 4:90-cv-00297-HHM-FLM), the Court found Gagner liable for trademark infringement of the AWA Marks and entered an order permanently enjoining him from, among other things, using the AWA Marks in any manner or in connection with any goods or services or making any statements or representations that would be likely to cause others to believe that Gagner was associated with the AWA wrestling promotion (the "1992 Injunction").  *See* Ex. 2.

Despite the Court's 1992 Injunction, Gagner resumed his infringement of the AWA Marks in or around 2007.  As a result, WWE — which had acquired the AWA Marks along with other AWA-related intellectual property, including the AWA video library, from AWA founder, Verne Gagne, and his companies in 2003 — filed a lawsuit against Gagner for, among other things, trademark infringement and cybersquatting.  On December 18, 2008, the Honorable Ann D. Montgomery entered judgment in favor of WWE and permanently enjoined Gagner from, *inter alia*, "using, exploiting, or trading on the AWA marks or any derivations or colorable imitations thereof" (the "2008 Injunction").  Dkt. 75.

In defiance of this Court's permanent injunctions, Gagner once again is illegally using the AWA Marks to promote his commercial endeavors and misrepresenting to the

302610798 v1

public that he owns rights in the AWA Marks.  Gagner's unlawful activities include, but are not limited to, (1) using the AWA Marks to sell and promote his wrestling events and services to the public; (2) representing to the public that he is the successor to the AWA wrestling promotion with the rights to the "AWA Championship"; and (3) operating an online store at officialawashop.bigcartel.com that offers infringing merchandise for sale.

This Court has now twice, in clear and unambiguous language, found that Gagner has no rights to the AWA Marks and ordered him not to use the AWA Marks in any way. The Court also expressly warned Gagner that "[s]hould Gagner fail to comply with [the 2008 Injunction]," he could be subject to a finding of contempt.  Dkt. 72.  Yet, Gagner unequivocally has demonstrated that he has no intention of complying with the Court's orders.  Accordingly, WWE respectfully submits that Ganger must be found in contempt. To that end, WWE asks this Court to: (i) order Gagner to comply with the 2008 Injunction and cease all use of the AWA Marks; (ii) require Gagner to pay to WWE the attorneys' fees it has incurred in bringing this Motion; (iii) fine Gagner in an amount no less than the profits he has reaped through his latest unlawful infringements; and (iv) impose on Gagner a prospective fine for any future violation of the Permanent Injunction in an amount equivalent to the attorneys' fees WWE would incur in bringing a Motion for Rule to Show Cause why Gagner should not be held in civil contempt for that violation.  Given the serial nature of his violations of the Court's orders, WWE respectfully submits that no lesser penalties will be sufficient to deter future violations by Gagner.

## II.    FACTUAL BACKGROUND[2]

### A.    WWE ACQUIRES ALL RIGHTS TO THE AWA MARKS.

From the late 1950s through the 1990s, the AWA promoted professional wrestling exhibitions throughout the Midwest and produced televised programming relating to those wrestling exhibitions through Verne Gagne's Minneapolis Boxing & Wrestling Club, Inc. ("MBW") (the "historical AWA wrestling promotion").  Dkt. 72 at 2.  Verne Gagne, through MBW and another company, obtained federal trademark registrations for the AWA Marks.[3]  *Id.*  The AWA Marks are valid and incontestable.  *See id.*; *see also* Verdini Decl. Exs. 3 and 4.

In January 2003, WWE acquired from Verne Gagne and his companies all rights, title and interest to the AWA's entire film library and all trademarks and service marks associated with the AWA, including the AWA Marks and all goodwill associated therewith.  Dkt. 72 at 3.  Since acquiring the AWA Marks, WWE has continued to develop, promote and otherwise build goodwill in the AWA Marks, including by marketing and promoting the AWA Marks by airing AWA footage to the public.  *Id.* WWE also has obtained trademark registrations for related AWA logos.  *See* Verdini Decl. Exs. 5 and 6.

---

[2] Sections II.A. and II.B. set forth findings of fact that this Court found to be undisputed in its October 21, 2008 Order granting WWE's Motion for Summary Judgment.
[3] AMERICAN WRESTLING ASSOCIATION was registered September 23, 1986 for promotion and production of wrestling matches for live events and television.  AWA was registered July 15, 1986 for promotion and production of wrestling matches for live events and television.  *See* Verdini Decl. at Exs. 3 and 4.

- 4 -

**B.    THIS COURT HAS REPEATEDLY ENJOINED GAGNER FROM INFRINGING THE AWA MARKS.**

**1.    The Court Enters the 1992 Injunction Following Gagner's Initial Infringement.**

In the late 1980s, Gagner worked for a brief time for MBW promoting wrestling shows under the names AMERICAN WRESTLING ASSOCIATION and AWA Championship Wrestling.  Dkt. 72 at 2.  In early 1990, Gagner's contract with MBW was terminated when MBW discovered that Gagner had conducted a wrestling event as an AWA event without the knowledge, participation or consent of MBW.  *Id.* at 3.  MBW then filed a trademark infringement action against Gagner in the United States District Court for the District of Minnesota at Docket No. 4:90-cv-00297-HHM-FLM seeking to enjoin Gagner from using the AWA Marks.  *Id.*  In June 1990, this Court entered a final judgment against Gagner on the merits of the trademark infringement action and an order permanently enjoining Gagner and his accomplices from, *inter alia*, "using in any manner or in connection with any goods or services the marks AWA, AMERICAN WRESTLING ASSOCIATION, ALL STAR WRESTLING, AWA Design Logo or any colorable imitation of those marks including the phrase 'American Wrestling League'" or making any representation likely to cause others to believe Gagner is associated with the AWA wrestling promotion.  *Id.*

**2.    The Court Enters the 2008 Injunction Following Gagner's Infringement in Violation of the 1992 Injunction.**

After WWE acquired the rights to the AWA Marks, it became aware that Gagner, in violation of the 1992 Injunction and WWE's rights in the AWA Marks, was once again

infringing the AWA Marks and representing to the public that he was associated the historical AWA wrestling promotion. *Id.* at 3-4. Specifically, among other activities, Gagner (1) advertised and offered wrestling services to the public under the names AWA Wrestling Entertainment, Inc. and AWA Worldwide; (2) described his wrestling promotion as a continuation of the historical AWA wrestling promotion; (3) operated an Internet website at www.awastars.com that prominently displayed the AWA Marks; and (4) purported to authorize and license others to use the AWA Marks, despite lacking any rights in them. *Id.* at 4. WWE filed the above-captioned lawsuit against Gagner, seeking redress for his unlawful exploitation of the AWA Marks and violation of the 1992 Injunction. *Id.* On October 21, 2008, Judge Montgomery granted WWE's Motion for Summary Judgment finding, *inter alia*, that Gagner unlawfully infringed WWE's rights in the AWA Marks. *Id.* at 10. Judge Montgomery then entered a final judgment against Gagner on December 18, 2008, pursuant to which she "***permanently prohibited and enjoined***" "***Gagner*** and his partners, associates, agents, representatives, servants, employees, successor and assigns, and all others acting in concert therewith or having knowledge thereof," ***inter alia, from (i) "in any way, using, exploiting, or trading on the AWA marks or any derivations or colorable imitations thereof" and (ii) "registering, using, owning, holding in any way, or trafficking in … any … domain names that are identical or confusingly similar to the AWA marks***." Dkt. 75 (emphasis added). At the time, Judge Montgomery declined to find Gagner in contempt of Court for his violations of the 1992 Injunction; however, she expressly noted in her summary judgment ruling that "[s]hould Gagner fail to comply with this [MSJ] Order, Plaintiffs may renew their

request for a finding of contempt."  Dkt. 72 at 12.

     **C.**     **Gagner Again Infringes the AWA Marks in Violation of the 2008 Injunction.**

Undaunted by this Court's 2008 Injunction, Gagner once again is unlawfully using and trading on the goodwill associated with the AWA Marks.  On or around September 25, 2018, WWE learned that Gagner was representing to the public on Facebook that he had the right to "promote and sanction" "AWA" titles and that he was "working close with ESPN" to sanction "all AWA World Titles."  Verdini Decl. Ex. 7.  WWE also learned that Gagner was using the AWA Marks to recruit "new, professional talent to put into" his wrestling productions by falsely claiming he owned the exclusive right to promote and sanction "AWA" titles.  Gagner's blatant defiance of the Court's 2008 Injunction was not unknowing or innocent.  Rather, he has purposefully misrepresented to the public that he and WWE entered into a "settlement" and that it "states that WWE was given SOME rights to the [AWA]."  *Id.*  In fact, there was no "settlement" and the Court's 2008 Injunction makes abundantly clear that Gagner owns no rights to the AWA Marks.

Through additional investigation, WWE learned that Gagner's violation of the 2008 Injunction was not an isolated incident on Facebook but part of a wide-ranging marketing campaign predicated on infringement of the AWA Marks, which includes:

- Offering for sale merchandise bearing the AWA Marks through the officialawashop.bigcartel.com online store, (*see* Exs. 8 and 9), including at least the following infringing products:



- Announcing the return of the AWA "World Championship" and claiming the "exclusive rights" to "sanction" AWA championship matches, Ex. 10;

- Promoting live contender's matches for the "AWA World Championship" on June 9 and July 14, 2018, Ex. 11;

- Posting pictures and videos featuring the AWA Marks on his company's Facebook page, Ex. 12, *e.g.*:





- Exploiting the AWA Marks to mislead the public regarding his affiliation with AWA, including by referring to "Dale Gagne's AWA," stating that his promotion

is "a continuation" of the historical AWA wrestling promotion, and using the AWA Marks in hashtags in his Twitter posts and his company's Facebook posts (*e.g.*, #AWA, #AWATITLES, #AWATITLESAREBACK, #AWABELTISBACK, #AWATHEBIGBELTISBACK, and #THEAWABIGBELTISBACK), Exs. 10, 12, and 13; and

- Misrepresenting his affiliation with and rights to the historical AWA wrestling promotion by, *inter alia*, stating in his LinkedIn profile that he is "President & CEO at WSL (Wrestling Superstars LIVE!), INC. An AWA Company," and claiming in his Facebook profile that he "purchas[ed] the bankrupted rights of the original American Wrestling Association, AWA," "re-invented the AWA," and entered into a "confidential settlement with WWE" following "a two year long legal battle with WWE over the intellectual property rights of the origional [sic] AWA," *id.* at Ex. 14.

The foregoing is irrefutable evidence of Gagner's noncompliance with the Court's 2008 Injunction.  Moreover, the unabashed nature of Gagner's violations of the 2008 Injunction demonstrates that, left unchecked, he will continue to violate this Court's orders with impunity.  WWE, therefore, asks this Court to use its contempt powers to sanction Gagner.

## III.   <u>LEGAL STANDARD</u>

A party may be held in civil contempt if it disregards or violates a court's order, including an injunction.  *See Ford Motor Co. v. B & H Supply, Inc.*, 646 F. Supp. 975, 1002 (D. Minn. 1986).  The purpose of a civil contempt order is to "coerce the defendant into compliance with a court order or to compensate the complainant for losses sustained, or both."  *Faegre & Benson, LLP v. Purdy*, 367 F. Supp. 2d 1238, 1243 (D. Minn. 2005) (quoting *Chi. Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 505 (8th Cir. 2000)).

Although the moving party must prove, by clear and convincing evidence, that the other party violated the court's order, it need not show that the violation was willful.

*Faegre & Benson*, 357 F. Supp. 2d at 1243.  Once the moving party has met that burden, the nonmoving party must establish "(1) that they were unable to comply, explaining why categorically and in detail, (2) that their inability to comply was not self-induced, and (3) that they made in good faith all reasonable efforts to comply."  *Reg'l Multiple Listing Serv. Of Minn., Inc. v. Am. Home Realty Network, Inc.*, 960 F. Supp. 2d 958, 973 (D. Minn. 2013) (quoting *Chi. Truck Drivers*, 207 F.3d at 507).

If the nonmoving party does not make the required showing and is found to be in contempt, the court "has broad discretion to design a remedy that will bring about compliance."  *U.S. v. Open Access Tech. Int'l, Inc.*, 527 F. Supp. 2d 910, 913 (D. Minn. 2007).  The contemnor can be ordered to comply with the court's injunction, pay a fine and pay attorneys' fees and costs incurred by the moving party in bringing the contempt motion.  *Faegre & Benson*, 357 F. Supp. 2d at 1243-44; *Ford*, 646 F. Supp. at 1002.

IV.   <u>ARGUMENT</u>

   A.   **GAGNER IS IN VIOLATION OF THE 2008 INJUNCTION.**

The 2008 Injunction unambiguously prohibits and enjoins Gagner from "in any way, using, exploiting, or trading on the AWA marks or any derivations or colorable imitations thereof."  Dkt. 72 at 13.  Gagner nonetheless persists in using the AWA Marks in connection with his wrestling activities.  He not only offers for sale merchandise prominently featuring the AWA Marks, but also has announced that he intends to re-start the "AWA Championship" and in that connection has used the AWA Marks to promote wrestling shows held in the summer of 2018 and to tease upcoming shows.  *See* Verdini Decl. Exs. 8, 10-12.  The 2008 Injunction likewise enjoins Gagner from "registering,

using, owning, holding in any way, or trafficking in … any … domain names that are

identical or confusingly similar to the AWA marks."  Yet, in similar disregard of that

prohibition, Gagner makes infringing goods available through

officialawashop.bigcartel.com.  Gagner's chosen subdomain "officialawashop" not only

uses an AWA Mark in its entirety, but exacerbates the risk of consumer confusion by

misrepresenting that his "AWA" shop is the "*official*" one.  These activities

unmistakably constitute clear and convincing evidence that Gagner is in violation of the

2008 Injunction.[4]

## B.   THE COURT SHOULD IMPOSE PENALTIES ON GAGNER SUFFICIENT TO ENSURE HIS FUTURE COMPLIANCE.

Gagner's serial infringement of the AWA Marks — in violation of *two* separate

court orders — has made it clear that he has little respect for either WWE's rights in the

AWA Marks or this Court's authority.  As Gagner has now twice demonstrated his

refusal to comply with this Court's orders, the only remedy to meaningfully deter future

violations is to hold Gagner in contempt and impose sanctions.  Accordingly, WWE

requests that this Court order Gagner to pay the attorneys' fees WWE has incurred in

bringing this Motion and fine him in an amount the Court finds appropriate, but in no

---

[4] Gagner cannot attack the validity of the 2008 Injunction in the context of a contempt proceeding.  *See Carter v. Van Buskirk*, 691 F.2d 390, 391 (8th Cir. 1982) (holding that an enjoined party is obligated to obey an injunctive order and cannot attack the validity of that order collaterally in a contempt proceeding); *Shell Oil Co.*, 430 F.2d at 1001 ("It is settled law that in a contempt proceeding for the alleged violation of an order . . . enjoining further infringement of a patent the validity of the patent is not in issue, and the decree is not subject to attack.").  Thus, Gagner cannot now contest either the validity of the 2008 Injunction or that his actions violate the 2008 Injunction.  Consequently, he should be found in contempt.

event less than the profits he has reaped from his violations of the Orders through

infringing sales of AWA merchandise or unlawful promotions of AWA events and titles.

*See Open Access*, 527 F. Supp. 2d at 912-13 (holding defendant in contempt for

repeatedly flouting Court orders and ordering a monetary fine).

"[A]n award of reasonable attorney's fees and expenses incurred by [the aggrieved

party] in seeking to enforce the decree is a form of compensatory relief that is well within

a district court's remedial discretion in civil contempt proceedings." *Jake's, Ltd. v. City

of Coates*, 356 F.3d 896, 900 (8th Cir. 2004); *see also Kehm v. Procter & Gamble Mfg.

Co.,* 724 F.2d 630, 630-31 (8th Cir. 1984) (per curiam) (affirming award of attorneys'

fees for contempt motion); *Faegre & Benson*, 367 F. Supp. 2d at 1244, 1250.

Likewise, Gagner's ill-gotten profits are an appropriate measure for a fine

because, if WWE were to sue Gagner for trademark infringement over Gagner's recent

activity, it would be entitled to recover, *inter alia*, "defendant's profits."  15 U.S.C. §

1117(a); *see also Nutramax Labs., Inc. v. Manna Pro Prods., LLC*, 0:16-CV-01255-JMC,

2017 WL 3276284, at *1 (D.S.C. Aug. 2, 2017) ("For civil contempt proceedings arising

from trademark infringement actions, … requiring the contemnor to disgorge its net

profits from the infringing activity to the complainant is an oft-used compensatory

sanction."); *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 642 F.

Supp. 2d 276, 303 (S.D.N.Y. 2009) (directing defendant to disgorge profits following

finding of civil contempt for violation of injunction prohibiting unauthorized use of

trademark); *see also ePlus Inc. v. Lawson Software, Inc.*, 946 F. Supp. 2d 449, 454 (E.D.

Va. 2013) ("Disgorgement of profits remains a viable remedy in civil contempt proceedings.").

WWE also respectfully requests that the Court include in its order an imposition of a prospective fine for future violations of the Permanent Injunction by Gagner to ensure his prospective compliance. *See N.L.R.B. v. Clinton Packing Co., Inc.*, 525 F.2d 1365, 1365 (8th Cir. 1975) (imposing "prospective fines" payable "in the event of any further act of contempt…, similar in nature to those acts here found to be contemptuous"); *Jake's*, 356 F.3d at 902 (referring to a prospective "per diem fine imposed for each day a contemnor fails to comply with an affirmative court order" as "a classic form of civil contempt remedy"); *Faegre & Benson*, 367 F. Supp. 2d at 1250 (D. Minn. 2005) (imposing a fine of $500 per day "[f]or each day after the date of this Order that Purdy continues to violate the Court's Orders"); *Open Access*, 527 F. Supp. 2d at 913 (imposing a fine of $5,000 per day "until such time as [defendant] complies in full with this Court's Order … and purges itself of the contempt.").

Importantly, Gagner's repeated violations demonstrate that another order from this Court to cease and desist use of the AWA Marks will be insufficient to deter future misconduct by Gagner.  Thus, the Court should order monetary sanctions that includes WWE's attorneys' fees, disgorgement of the profits Gagner has reaped through infringement, and a prospective fine for any future violations.  *See Reed v. A & A Stanley Const., Inc.*, No. 12-cv-869, 2013 WL 1065371, at *4 (D. Minn. Feb. 13, 2013) (instructing courts, in determining a contempt sanction, to consider its "probable effectiveness" and "the willfulness of the contemnor in disregarding the court's order").

- 13 -

## V.   <u>CONCLUSION</u>

For the foregoing reasons, WWE respectfully request that this Court grant the

Motion for a Rule to Show Cause.

Dated: October 11, 2018          By: */s/ Robert D. Brownson*
                                     Robert D. Brownson (#12245)

                                     K&L GATES, LLP
                                     Jerry S. McDevitt (*admitted pro hac vice*)
                                     Curtis B. Krasik (*admitted pro hac vice*)
                                     Christopher M. Verdini (*admitted pro hac vice*)
                                     K&L Gates Center
                                     210 Sixth Avenue
                                     Pittsburg, PA15222
                                     Telephone: (412)355-6500
                                     Facsimile (412)355-6501
                                     Jerry.McDevitt@klgates.com
                                     Curtis.Krasik@klgates.com
                                     Christopher.Verdini@klgates.com

                                     BROWNSON NORBY, PLLC
                                     Robert D. Brownson (#12245)
                                     Olivia M. Cooper (#0398322)
                                     4800 Capella Tower
                                     225 South Sixth Street
                                     Minneapolis, MN 55402
                                     Telephone: (612) 332-4020
                                     Facsimile: (612) 332-4025
                                     Rbrownson@BrownsonNorby.com
                                     Ocooper@BrownsonNorby.com

                                     *Attorneys for Plaintiffs*
                                     *World Wrestling Entertainment, Inc. and*
                                     *WWE Properties International, Inc.*

- 14 -

302610798 v1