

Curtis B. Krasik
curt.krasik@klgates.com

T 412 355 8696
F 412 355 6501

December 10, 2018                                           Via ECF

Magistrate Judge Katherine Menendez
United States District Court 8E U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

Re:   *World Wrestling Entm't, Inc. et al. v. AWA Wrestling Entm't, Inc. et al.*,
      **Court File No. 07-cv-2058(ADM/KMM)**

Dear Magistrate Judge Katherine Menendez:

Pursuant to your Order dated November 15, 2018 on Plaintiffs' Motion for a Rule to Show Cause (Dkt. No. 91, the "Order"), Plaintiffs World Wrestling Entertainment, Inc. and WWE Properties International, Inc. (collectively "WWE") submit this letter brief addressing the "legal significance of an individual's ability to pay" in relation to the Court's imposition of civil contempt sanctions against Defendant Dale Gagner ("Mr. Gagner").

As a result of his willful violations of this Court's December 18, 2008 Final Judgment ("Permanent Injunction"), WWE has urged this Court to sanction Mr. Gagner by ordering him to: (1) reimburse WWE for the attorneys' fees it has incurred in bringing its Motion for A Rule to Show Cause (the "Motion"); (2) disgorge the profits he obtained through his trademark infringement in violation of the Permanent Injunction; and (3) pay a fine in the event of any future violation of the Permanent Injunction. (*See* Dkt. No. 78 at 2). With regard to the legal significance of an individual's ability to pay in imposing civil contempt sanctions, the law draws a distinction between civil contempt sanctions that are compensatory versus coercive. For the reasons explained more fully below, the Court need not consider Mr. Gagner's financial resources in imposing the **compensatory** sanctions of reimbursement of the attorneys' fees incurred by WWE in connection with the Motion and the disgorgement of Mr. Gagner's profits from violation of the Permanent Injunction; the Court is required to consider Mr. Gagner's financial resources in imposing the **coercive** sanction of a prospective fine payable to the Court.

Additionally, pursuant to the Court's Order, WWE submits as Exhibit A hereto the Declaration of WWE's counsel, Christopher M. Verdini, setting forth the reasonable attorneys' fees WWE has incurred in connection with bringing its Motion. As set forth in

K&L GATES LLP
K&L GATES CENTER  210 SIXTH AVENUE  PITTSBURGH  PA 15222-2613
T +1 412 355 6500  F +1 412 355 6501  klgates.com

klgates.com

Exhibit A, WWE is seeking $14,370.50 in attorneys' fees as part of the compensatory sanctions it urges the Court to impose on Mr. Gagner.

## I. The Court Need Not Consider Mr. Gagner's Financial Resources in Imposing the Compensatory Sanctions Requested by WWE.

Civil contempt sanctions may be compensatory or coercive in nature. *U.S. v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947). Compensatory monetary sanctions are payable to the complainant and intended to "compensate the complainant for losses sustained." *Id.* In contrast, coercive monetary sanctions are payable to the Court and intended to "coerce the defendant into compliance." *Id.*

In *United Mine Workers*, the U.S. Supreme Court addressed the legal standards to be considered in imposing compensatory and coercive monetary sanctions. *Id.* at 304. For compensatory sanctions, courts must base the monetary sanction "upon evidence of complainant's actual loss." *Id.* For coercive sanctions, on the other hand, courts must "consider [1] the character and magnitude of the harm threatened by continued contumacy, [2] the probable effectiveness of any suggested sanction in bringing about the result desired," and "[3] the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant" (the "*United Mine Workers* Factors"). *Id.*

The Eighth Circuit has addressed the distinction between compensatory and coercive sanctions, and specified that the *United Mine Workers* Factors apply only to coercive sanctions. *See Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1224 (8th Cir. 2006); *see also Reg'l Multiple Listing Serv. of Minn., Inc. v. Am. Home Realty Network, Inc.*, 960 F. Supp. 2d 958, 975 (D. Minn. 2013) (awarding compensatory relief, but separately declining to order coercive sanctions under the *United Mine Workers* Factors).[1]

As noted at the outset, WWE urges the Court to impose compensatory sanctions upon Mr. Gagner by ordering him: (1) to reimburse WWE for the attorneys' fees it has incurred in bringing its Motion and (2) to disgorge any profits he obtained through his

---

[1] Despite this Eighth Circuit authority, some courts in this District have applied the *United Mine Workers* Factors to civil contempt sanctions generally, whether compensatory or coercive in nature. *See, e.g., Edeh v. Carruthers*, CIV. 10-2860 RJK/JSM, 2011 WL 4808194, at *3 (D. Minn. Sept. 20, 2011), *R&R adopted sub nom.* 2011 WL 4808191 (D. Minn. Oct. 11, 2011) ("The traditional options for civil contempt sanctions include ... fines payable to the Court, compensatory fines payable to victims, fees and expenses of litigation, or modification of the permanent injunction. ... When imposing a civil contempt sanction, the [*United Mine Workers* Factors] must be assessed."). In *Edeh*, however, it is noteworthy that the court appears only to have considered coercive sanctions to which the *United Mine Workers* Factors would apply, although the language of the opinion (and subsequent citation to that opinion) is not so limited. Regardless, as explained in Section II below, even if the Court were to consider Mr. Gagner's financial resources before in compensatory sanctions, Mr. Gagner has presented no evidence of his financial condition and, therefore, that *United Mine Workers* Factor does not preclude imposing monetary sanctions here.

trademark infringement in violation of this Court's Permanent Injunction. (See Dkt. No. 78 at 2).

Attorneys' fees and disgorgement of profits are both compensatory sanctions. See Jake's, Ltd., Inc. v. City of Coates, 356 F.3d 896, 900 (8th Cir. 2004) ("[A]n award of reasonable attorney's fees and expenses incurred by the [complainant] in seeking to enforce [an injunction] is a form of **compensatory** relief." (emphasis added)); Reg'l Multiple Listing Serv. of Minn., 960 F. Supp. 2d at 975 (awarding "reasonable fees and costs incurred" in bringing the contempt motion as compensatory relief); Nutramax Labs., Inc. v. Manna Pro Prods., LLC, 0:16-CV-01255-JMC, 2017 WL 3276284, at *1 (D.S.C. Aug. 2, 2017) ("For civil contempt proceedings arising from trademark infringement actions, ... requiring the contemnor to disgorge its net profits from the infringing activity to the complainant is an oft-used **compensatory** sanction." (emphasis added)). Thus, the Court can sanction Mr. Gagner by ordering him to reimburse WWE for the reasonable attorneys' fees it has incurred in connection with the Motion and any profits he wrongfully obtained as a result of his violations of this Court's Permanent Injunction without consideration of his financial resources.

## II. The Court May Also Impose WWE's Requested Prospective Fine As a Coercive Sanction.

WWE's third requested sanction — a fine against Mr. Gagner in the event of any future violations of the Permanent Injunction — is coercive in nature and thus subject to the United Mine Workers Factors, including consideration of the amount of the contemnor's financial resources and the consequential burden of the sanction to that defendant.

Nevertheless, because the fine would be prospective and conditional only, the Court can order such a sanction irrespective of Mr. Gagner's financial resources. See, e.g., Leadsinger, Inc. v. Cole, 05 CIV. 5606(HBP), 2006 WL 2266312, at *21 (S.D.N.Y. Aug. 4, 2006) ("Defendant ... has repeatedly claimed that he lacks financial resources and is considering filing for bankruptcy ... The type of coercive sanction imposed here, however, will be prospective and conditional. Thus, defendant will not have to pay the sanction so long as he complies with my September 26th Order."). Indeed, Mr. Gagner would be required to pay the fine **only** if he chooses to violate the Permanent Injunction; it is entirely within his control whether he subjects himself to any burden such a fine might pose.

Even if the requested fine were not prospective and conditional, the Court would still be justified in imposing it because Mr. Gagner has failed to satisfy his burden to demonstrate any alleged financial hardship. In applying the United Mine Workers Factors, the contemnor has the burden to submit evidence of alleged financial hardship. See Mackey v. Jutila, CIV. 13-432 MJD/LIB, 2014 WL 521025, at *5 (D. Minn. Feb. 10, 2014) ("[T]here is no evidence before the Court that a civil fine would be an inappropriate burden on Defendant."); Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 658 (2d Cir. 2004) ("A contemnor may be excused from the burden of a civil contempt sanction if it lacks the financial capacity to comply; but the contemnor bears the burden of production in raising such a defense."). As a result, courts in this District have consistently ordered monetary sanctions notwithstanding the potential financial burden

3

where the contemnor fails to provide the Court with evidence of his/her financial resources. *See, e.g.*, *Mackey*, 2014 WL 521025, at *5 (ordering $5,000 fine expungable for seven days after entry of the contempt order); *Piscitiello v. Delanor, Kemper & Assocs., LLC*, CIV. 11-2204 RHK/AJB, 2013 WL 3789723, at *4 (D. Minn. July 18, 2013) (ordering a daily fine where the contemnor's "financial situation is unclear" and the contempt arose from the contemnor's refusal to answer discovery requests seeking information about the contemnor's financial resources); *U.S. v. Gunnink*, CIV. 12-1528 MJD/TNL, 2013 WL 7390853, at *4 (D. Minn. Dec. 12, 2013), *R&R adopted*, 2014 WL 186180 (D. Minn. Jan. 16, 2014) (ordering fine of $1,316.37 in costs and attorneys' fees where there was "no evidence in the record" of the contemnor's financial resources except that the complaint asserted he "earns his living as an organic farmer"); *U.S. v. Thornton*, 13-MC-87 SRN/TNL, 2015 WL 1522242, at *4-5 (D. Minn. Jan. 29, 2015), *R&R adopted as modified*, 2015 WL 1522245 (D. Minn. Mar. 27, 2015), *aff'd*, 621 Fed. Appx. 360 (8th Cir. 2015) (unpublished) (ordering $1,000 contempt sanction and the contemnor's incarceration if the contempt remained unpurged within a certain number of days after entry of the order, where there was "no evidence in the record of [the contemnor's] financial resources").

Mr. Gagner has had ample opportunity to participate in this proceeding but thus far has declined to do so. Mr. Gagner chose not to appear at the November 15, 2018 hearing on WWE's Motion despite being served with notice of that hearing through multiple mechanisms, including direct personal service. (*See* Dkt. No. 91 at 2). Most recently, Mr. Gagner contacted WWE's counsel, Christopher Verdini, by telephone on November 20, 2018 and left a voicemail message indicating that he had received, and was responding to, the Court's November 15, 2018 Order. WWE's counsel called back later that same day and left a voicemail message for Mr. Gagner encouraging him to return the call. As of this date, Mr. Gagner has not.

The Court has been exceedingly tolerant of Mr. Gagner's lack of participation in this proceeding to date and afforded Mr. Gagner every opportunity to be heard, including (i) ordering a second hearing on his contempt "to give him an additional opportunity" to be heard," notwithstanding his choice not to appear at the November 15, 2018 hearing; (ii) "strongly encourag[ing] him to participate in these proceedings;" and (iii) inviting him to file a written response at any time before the second hearing to address "whether his financial position should be taken into account in determining the proper amount of any civil contempt fine." (Dkt. No. 91 at 2-3). The Court's efforts undoubtedly constitute a "reasonable inquiry" into Mr. Gagner's financial resources. *See N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1353 (2d Cir. 1989) (upholding monetary sanction imposed after the district court judge made a "reasonable inquiry into defendants' ability to pay the sanction by suggesting that they file affidavits of financial ability" but defendants failed to provide the requested affidavit).

As such, if Mr. Gagner fails to submit evidence regarding his financial position by or at the December 17, 2018 hearing, the Court can and should proceed to impose the monetary sanctions that WWE seeks. *See id.* ("A contemnor's failure to provide financial information upon which the burden of a sanction may be evaluated may not be charged ... against the [plaintiffs] or result in a holding that the district court abused its discretion in imposing the sanction." (internal quotations and citation omitted)); *U.S. Commodity Futures*

*Trading Comm'n v. Lake Shore Asset Mgmt. Ltd.*, 07 C 3598, 2007 WL 4198250, at *4 (N.D. Ill. Nov. 20, 2007) (inviting the contemnors to provide evidence of their financial resources to the court by a set date but warning that "[i]f they fail to submit these materials, the court will rule without the benefit of their views"). As the Second Circuit has cogently ruled, a contemnor's failure to provide information on his finances "may not be charged . . . against the [plaintiff] or result in a holding that the district court abused its discretion in imposing the sanction." *Terry*, 886 F.2d at 1353.

If Mr. Gagner were to come forward with evidence of some financial hardship, the Court may nonetheless impose a reasonable fine upon him — even if it would constitute a relatively significant amount — in light of his willful violations of the Permanent Injunction. *Cannon v. Loyola Univ. of Chi.*, 84 C 8063, 1989 WL 64675, at *2 (N.D. Ill. June 7, 1989) (ordering the contemnor to pay over $6,000 in attorneys' fees where she earned $30,000 a year, with a third of the income already paid on garnishment, because although the fees were a "significant amount," they were warranted by contemnor's ongoing willful behavior).

### III. The Court May Seek Additional Information From Mr. Gagner to Determine the Appropriate Amount of Disgorgement.

Because of Mr. Gagner's decision not to participate thus far in this proceeding, WWE and the Court do not have any information regarding the profits Mr. Gagner has wrongfully obtained from violating the Permanent Injunction. When faced with attempting to determine a compensatory sanction of disgorgement of profits in circumstances in which the contemnor has failed to provide such information, courts have ordered the contemnor to provide the financial information necessary to calculate disgorgement by a date certain. *See, e.g., A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 296 (S.D.N.Y. 2000) (ordering contemnor to file within thirty days a sworn statement detailing its net profits). Accordingly, WWE asks that the Court instruct Mr. Gagner to provide, within thirty days of the December 17 hearing, an affidavit and supporting records setting forth his gross profits from violation of the Permanent Injunction and his claimed deductions for costs and expenses.

### IV. WWE's Request for Reimbursement of $14,370.50 in Attorneys' Fees Incurred In Connection with the Motion Is Reasonable.

WWE requests that this Court order Mr. Gagner to pay WWE $14,370.50 to reimburse it for attorneys' fees incurred in connection with the Motion. This amount accords with the Eighth Circuit's standard for the determination of reasonable attorneys' fees.

The Court has substantial discretion in how it determines reasonable attorneys' fees. "The essential goal in shifting fees ... is to do rough justice, not achieve auditing perfection." *Ewald v. Royal Norwegian Embassy*, No. 11-cv-00021 16, 2015 WL 1746375, at *4-*5 (D. Minn. Apr. 13, 2015).

In the Eight Circuit, the determination of reasonable attorneys' fees begins with a "lodestar calculation." The lodestar is determined "by multiplying the number of hours reasonably expended by the reasonable hourly rat[e]." *Corbell v. Sullivan*, 353 F.3d 628,

5

630 (8th Cir. 2003). The lodestar is presumed to be a reasonable fee. *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986); *Ewald v. Royal Norwegian Embassy*, 2015 WL 1746375, at *13 ("Once the lodestar is calculated, there is a 'strong presumption' that it is reasonable").

Generally, the reasonable hourly rate to be used in the lodestar calculation is "the prevailing market rate, that is, 'the ordinary rate for similar work in the community where the case has been litigated.'" *Moysis v. DTC Datanet*, 278 F.3d 819, 828-29 (8th Cir. 2002) (quoting *Emery v. Hunt*, 272 F.3d 1042, 1047 (8th Cir. 2001)). In determining that prevailing market rate, the Court is to consider what a "lawyer of reasonably comparable skill, experience, and reputation" in the relevant market charges. *Phenow v. Johnson*, 766 F. Supp.2d 955, 957 (D. Minn. 2011) (quoting *McDonald v. Armontrout*, 860 F.2d 1456, 1458–59 (8th Cir.1988)).

Mr. Verdini's declaration (attached as Exhibit A hereto) details the time spent, and fees incurred by, WWE's attorneys in connection with this Motion for which WWE seeks reimbursement. The amount of attorneys' fees for which WWE seeks reimbursement is reasonable for the services provided, particularly given the unique expertise that K&L Gates LLP ("K&L Gates"), WWE's lead counsel in this matter, has developed with respect to its representation of WWE. As explained in Mr. Verdini's declaration, K&L Gates has been WWE's primary outside counsel for approximately 30 years and has represented WWE in nearly every significant lawsuit to which WWE has been a party during that time throughout the United States. As WWE's primary outside counsel, K&L Gates, and the attorneys representing WWE in this matter specifically, have gained unique and extensive knowledge of WWE's business and practices, including as particularly pertinent here, WWE's intellectual property portfolio and historical acquisitions of third-party intellectual property, which has enabled K&L Gates to handle this matter more effectively and efficiently.

The hours expended by WWE's counsel as set forth in Mr. Verdini's declaration are non-duplicative and reflect work appropriately allocated between paralegals, associates, and partners to ensure efficiency and cost-effectiveness. They also do not reflect (i) all of the time K&L Gates billed WWE for preparing and filing WWE's Motion; (ii) the time co-counsel, Brownson Norby PLLC ("Brownson"), billed WWE for preparing and filing WWE's Motion; and (3) any time or expenses, including travel, billed to WWE for counsel's preparation for and attendance at the November 15, 2018 hearing on WWE's Motion.

The hourly rates charged by the K&L Gates attorneys are reasonable. While the rates are higher than those charged by K&L Gates' co-counsel, Brownson, since this case was filed in 2007, the K&L Gates attorneys have performed the bulk of the substantive work both in originally obtaining the Permanent Injunction and in connection with the Motion. This work has involved not only specialized knowledge of intellectual property law but also specialized knowledge about WWE's business and intellectual property portfolio. (*See* Ex. A at ¶¶ 5-10). Additionally, the hourly rates charged by K&L Gates are in line with typical rates for specialized intellectual property practitioners both in Minneapolis and nationwide. According to the 2017 American Intellectual Property Law Association Report of the Economic Survey, the hourly rates of the K&L Gates attorneys actually are less than the average hourly rates for partners and associates who specialize in intellectual property work

6

and are employed by firms the size of K&L Gates. (*See* id. at ¶¶ 15-17 and Ex. 3). The K&L Gates hourly rates also are between the 75th and 90th percentile of the average hourly rates for intellectual property work performed by firms in the Minneapolis/St. Paul metropolitan area. *Id.*

The requested fees, therefore, accord with the lodestar calculation. *See, e.g., Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993) ("A national market or a market for a particular legal specialization may provide the appropriate market."); *Planned Parenthood, Sioux Falls Clinic v. Miller*, 70 F.3d 517, 519 (8th Cir. 1995) (approving hourly rates charged in Chicago market in a case litigated in South Dakota, although they were higher than local rates, because the "extensive experience" of the attorneys in a specialized area and their "routine" handling of such matters meant "they were able to handle the case in a shorter length of time than a local lawyer, without comparable experience, would have needed"); *M-I Drilling Fluids UK Ltd. v. Dynamic Air Inc.*, CV 14-4857 (JRT/HB), 2018 WL 1399308, at *3 (D. Minn. Mar. 20, 2018) (finding an hourly rate to be reasonable even when "somewhat high for the Twin Cities generally" because "patent litigators often have a national practice, reducing the importance of geographic location").

If the Court finds, for whatever reason, that the lodestar calculation yields a lower amount than WWE's request, it may still adjust that lodestar amount upward in light of "the plaintiff's overall success; the necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested; and the efficiency with which the plaintiff's attorneys conducted that activity." *Phenow*, 766 F. Supp.2d at 957 (quoting *Jenkins v. Mo.*, 127 F.3d 709, 718 (8th Cir.1997)). The Court has recognized that WWE made "a strong showing that Mr. Gagner has engaged in conduct that violates the permanent injunction." (Dkt. No. 91 at 2). Moreover, Mr. Gagner's continued violations of the Permanent Injunction make clear that Mr. Gagner does not intend to respect this Court's authority and desist his trademark infringement absent contempt sanctions. This makes WWE's pursuit of those sanctions, and its corresponding expenditure of the requested fees, necessary and useful.

For the reasons set forth herein, WWE urges the Court to impose the sanctions requested by WWE in its Motion.

Respectfully submitted,


*/s/ Curtis B. Krasik*


CBK/lw
Enclosures

cc:     Dale Gagner (by Email and Overnight Mail)


7