UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

WORLD WRESTLING ENTERTAINMENT, INC. and WWE PROPERTIES INTERNATIONAL, INC. (as successor in interest to WWE LIBRARIES, INC.)

        Plaintiffs,

v.

AWA WRESTLING ENTERTAINMENT, INC., and DALE R. GAGNER, an individual, a/k/a DALE R. GAGNE, a/k/a DALE GAGNE,

        Defendants.

Case No. 07-cv-2058-ADM-KMM

REPORT AND RECOMMENDATION

---

The Plaintiff, World Wrestling Entertainment, Inc. ("WWE"), asks the Court to make a finding of civil contempt against the Defendant, Dale R. Gagner, for violating the permanent injunction entered by United States District Judge Ann D. Montgomery in 2008 ("2008 Injunction"). (Contempt Mot., ECF No. 78.) The 2008 Injunction provides, in part, that:

> Gagner and his partners, associates, agents, representatives, servants, employees, successors and assigns, and all others acting in concert therewith or having knowledge thereof are prohibited and enjoined from infringing on any of the AWA marks or Plaintiffs' rights therein, including, but not limited to, in any way, using, exploiting, or trading on the AWA marks or any derivations or colorable imitations thereof[.]

(Order (Oct. 21, 2008), ECF No. 72.) It also prohibited Mr. Gagner and any associates from "registering, using, owning, holding in any way, or trafficking in

1

... any ... domain names that are identical or confusingly similar to the AWA marks." (*Id.*)

The Court held a hearing on the motion for contempt on November 15, 2018. (Mins. of 11/15/2018 Hr'g, ECF No. 89.) Mr. Gagner did not appear at that hearing and the Court issued an Order requiring him to appear and show cause why he should not be held in contempt. (Order (Nov. 15, 2018), ECF No. 91.) On January 23, 2019, the Court held a second hearing on WWE's motion for contempt and Mr. Gagner appeared by telephone, objecting to WWE's request. (Mins. of 1/13/2019 Hr'g, ECF No. 96.) Based on the hearing, the parties' written submissions, and the entire record in this proceeding, the Court concludes that WWE's motion for contempt should be granted in part and denied in part.

### Legal Standard

An order finding a litigant in contempt requires a "failure to comply with a 'clear and specific' underlying order." *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1223 (8th Cir. 2006) (citation omitted). "Civil contempt is 'designed both to coerce obedience and to compensate the complainant for losses sustained.'" *Edeh v. Carruthers*, No. 10-cv-2860 (RHK/JSM), 2011 WL 4808194, at *3 (D. Minn. Sept. 20, 2011) (quoting *Chao v. McDowell*, 198 F. Supp. 2d 1093, 1098 (E.D. Mo. 2002)). The moving party must provide clear and convincing evidence "that the alleged contemnors violated the court's orders." *Id.*

If a financial contempt sanction is intended to coerce compliance with an order, "the sanction should be payable to the court, rather than to the opposing party." *Chaganti*, 470 F.3d at 1224. A compensatory sanction, on the other hand, may be paid to the complainant when the amount is based on evidence of the losses it sustained. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947). Any sanction for civil contempt must not be punitive. *United States v. Hefti*, 879 F.2d 311, 315 (8th Cir. 1989) ("It is an elementary rule that in civil

contempt the sanctions are coercive (to encourage compliance), not punitive."); *In re Fannie Mae Sec. Litig.*, 552 F3d 814, 823 (D.C. Cir. 2009) ("[C]ivil contempt sanctions may not be punitive—they must be calibrated to coerce compliance or compensate a complainant for losses sustained.").

In crafting a sanction to coerce compliance, district courts have broad discretion. *Edeh*, 2011 WL 4808194, at *3 (quoting *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys.*, 369 F.3d 645, 657 (2d Cir. 2004). Several factors guide the court, including: (1) the harm caused by the violation; (2) how likely the sanction will be to coerce compliance; (3) the financial resources of the party that violated the order and the burden the sanctions will impose; and (4) whether the contemnor acted willfully. *Id.* (citing *United States v. United Mine Workers*, 330 U.S. at 303–04.

### Mr. Gagner Violated the Injunction

WWE has provided clear and convincing evidence that Mr. Gagner has violated the 2008 Injunction prohibiting his use of the AWA marks owned by WWE. In September of 2018, Mr. Gagner posted on his personal Facebook page that his company, WSL, Inc.,[1] "will sanction all AWA World Titles." (Verdini Decl., ECF No. 81, Ex. 7.) In this Facebook post, Mr. Gagner promoted a relationship between WSL and a cable sports network he claimed owns classic footage of AWA Championship Wrestling shows. (*Id.*) In another Facebook post, Mr. Gagner promoted an independent wrestling show put on by an organization called "Power House Xtreme Wrestling," advertising a competition for "the first AWA World Championship Contender's match…." (Verdini Decl., Ex. 11.) WWE also presented evidence of an online store selling merchandise bearing AWA logos and other uses of the AWA marks on patches and clothing items. (Verdini Decl., Ex. 8.) The online store identifies the merchandise for sale as officially

---

[1]   "WSL" is an acronym for "Wrestling Superstars Live." Mr. Gagner's LinkedIn profile identifies him as the "President & CEO at WSL, (Wrestling Superstars LIVE!), INC. An AWA Company." (Verdini Decl., Ex. 14.)

3

licensed products of "AWA-WSL Inc." (*Id.*) Moreover, the online store uses an AWA mark in its domain name: "officialawashop." (*Id.*) WSL's Facebook page promoted and linked to the online story, encouraging customers to obtain AWA branded merchandise from the website. (*Id.*) In other communications on Twitter and Facebook, Mr. Gagner used AWA marks to indicate his affiliation with the AWA, such as promoting AWA championship belts and representing that he "re-invented the AWA" and owned rights to the AWA marks. (Verdini Decl., Exs. 10, 12, 13, 14.)

These examples and other information in the record clearly establish that Mr. Gagner has used and exploited the AWA marks in ways that are prohibited by the 2008 Injunction. The underlying Order establishing the 2008 Injunction is clear and specific, and Mr. Gagner's demonstrated conduct violates it.[2] As a result, the Court recommends that Mr. Gagner be found in contempt.

During the January 23, 2019 hearing, Mr. Gagner attempted, unconvincingly, to argue that he has not violated the injunction. For several reasons, the Court is not persuaded. First, Mr. Gagner's arguments at the hearing were not based on any evidence. He neglected to make any written response to the motion for contempt or submit any evidentiary material relevant to the issue whether he violated the injunction. Second, although he argued that promotional materials for independent wrestling shows using the AWA marks and the online store selling AWA branded merchandise were not associated with him, the exhibits and evidentiary material offered by WWE clearly link these exploitations of the AWA marks to Mr. Gagner. Screenshots of the online store's webpages plainly bear the logo of Mr. Gagner's own company, and Mr. Gagner repeatedly promoted independent wrestling shows through his Twitter and

---

[2] Mr. Gagner does not suggest that he was unable to comply with the 2008 Injunction. *See Edeh*, 2011 WL 4808194, at *3 (explaining that if the party seeking contempt meets its burden, the burden shifts to the alleged contemnor to demonstrate inability to comply).

Facebook accounts by referencing the AWA marks. Third, Mr. Gagner argued that the injunction does not prohibit him from discussing the history of the AWA, but that reality is completely irrelevant. WWE has not asked the Court to hold Mr. Gagner in contempt for discussing the history of the AWA online or otherwise. None of the evidence submitted to demonstrate that Mr. Gagner violated the injunction is based even remotely on mere historical discussion. Rather, the evidence submitted shows that Mr. Gagner was using, exploiting, and trading on the AWA marks.

WWE's motion should be granted to the extent it requests a finding that Mr. Gagner is in civil contempt because he has violated the injunction. Mr. Gagner should also be ordered to comply with the 2008 Injunction and to cease all prohibited uses of the AWA marks.

### *Appropriate Contempt Sanction*

WWE requests contempt sanctions in three forms. First, WWE asks that Mr. Gagner be required to pay WWE's attorneys' fees incurred in bringing the motion for contempt. Second, WWE asks the Court to impose a fine on Mr. Gagner that is equal to the profits he has obtained through his violation of the injunction. And finally, WWE requests that the Court impose a prospective fine for any future violation of the injunction in an amount equivalent to the attorneys' fees WWE would incur in bringing a future contempt motion. Based on the record before the Court, WWE's request to be compensated for the attorneys' fees incurred in bringing the motion for contempt is granted, but its other requests are denied.

As noted above, in determining the appropriate sanction for Mr. Gagner's contempt, the Court should consider several factors. Here, in considering the imposition of financial sanctions for his contempt, a factor of paramount importance is whether Mr. Gagner will be able to pay. Based on the record before the Court, Mr. Gagner's financial resources are quite limited. In his letter and attached exhibits submitted on January 23, 2019, Mr. Gagner represents that

5

he receives food stamps, and his income source is limited to Social Security disability benefits payments. (*See* ECF Nos. 97, 98.) There is no information before the Court that would suggest Mr. Gagner is going to be able to pay a large civil-contempt sanction.

Notwithstanding his scant financial resources, Mr. Gagner's conduct in this case involves actions that directly contravene a clear injunction prohibiting him from doing precisely what he did. The Court must also take into account whether Mr. Gagner's conduct was willful and whether a sanction to be imposed would be likely to coerce compliance with the 2008 Injunction. Mr. Gagner cannot claim that he had no knowledge of the 2008 Injunction or that the terms of that order left him confused about what he is prohibited from doing. The exhibits provided by WWE suggest that a finding of willfulness is appropriate as they reveal that Mr. Gagner repeatedly referenced AWA in promotional materials for events and merchandise. Under these circumstances, if the Court weight Mr. Gagner's financial condition too heavily and concluded that no financial sanction could be imposed, that would free him from any consequences for his conduct. A financial sanction for Mr. Gagner's contempt is appropriate and necessary to impress upon him that he cannot continue using and exploiting the AWA marks.

The question remaining is: what financial penalty will appropriately achieve the coercive effect necessary without veering into the realm of a punitive fine? As noted above, WWE seeks disgorgement of any profits Mr. Gagner made from his violations of the 2008 Injunction and the imposition of an additional fine to deter future violations. Even though courts have found disgorgement of profits from infringing activity to be an appropriate civil-contempt sanction in the context of trademark-infringement cases, *see Nutramax Labs., Inc. v. Mann Pro Prods., LLC*, No. 0:16-cv-01255-JMC, 2017 WL 3276284, at *1 (D.S.C. Aug. 2, 2017), the Court finds that, at this time, WWE has not established that Mr. Gagner made any profits at all. WWE has requested that the Court Order Mr. Gagner to disclose information to show what profits he made, but because the contempt sanction required below is sufficient to coerce

compliance, obtaining that information is unnecessary. Therefore, the Court does not recommend imposition of any profit-disgorgement contempt sanction. Moreover, because of serious questions concerning Mr. Gagner's ability to pay, the Court finds that imposing additional financial sanctions, whether disgorgement of profits or an additional financial penalty to further deter future violations, would cease to serve the coercive purpose of contempt sanction and transform into punitive fines.

Nevertheless, the record demonstrates that Mr. Gagner's violations of the 2008 Injunction have harmed WWE. Specifically, his conduct caused WWE to incur attorney's fees in bringing the motion for contempt. In light of this specific and identifiable harm, the Court finds that a compensatory financial sanction is appropriate to coerce Mr. Gagner to comply with the 2008 Injunction. *See Jake's Ltd. v. City of Coates*, 356 F.3d 896, 900 (8th Cir. 2004) ("[A]n award of reasonably attorney's fees and expenses incurred by [the moving party] in seeking to enforce the decree is a form of compensatory relief that is well within a district court's remedial discretion in civil contempt proceedings.").

WWE seeks $14,375.50 in attorneys' fees incurred for services provided by its attorneys in bringing the motion for contempt, supporting its request with the declaration of Christopher Verdini, billing records associated with the motion for contempt, and information concerning the local rates for intellectual property lawyers in the Minneapolis and St. Paul area. (12/10/2018 Verdini Decl., ECF No. 92-1 & Exs.1–3.) The request for fees is well supported, the hours expended in bringing the motion (a total of 30.1), and the rates claims are not unreasonable. WWE has paid at least this amount for its attorneys' services. (12/10/2018 Verdini Decl. ¶ 19.)

However, based on the record before the Court concerning Mr. Gagner's resources, it is difficult to fathom that he would be capable of paying more than $14,000 to WWE. Ordering him to pay the full bill for WWE's attorneys' fees would transform the coercive purpose of civil-contempt sanctions into a punitive

7

one. Under the circumstances presented here, a lesser financial sanction will adequately coerce Mr. Gagner into compliance with the 2008 Injunction's prohibitions and compensate WWE for harm caused by his violations. Specifically, the Court finds that $1,000 represents an appropriate financial sanction.

Finally, the Court declines to adopt additional suggestions offered by WWE's counsel at the hearing for how to structure any financial sanction in this case.[3] Although the undersigned has serious doubts whether WWE will ever be able to collect the financial contempt sanction recommended here, the Court will not impose a requirement that Mr. Gagner make regular payments nor monitor any payment plan.

### Recommendation

For all the reasons stated above, **IT IS HEREBY RECOMMENDED THAT:**

1. Plaintiff's Motion for Contempt **(ECF No. 78)** should be **GRANTED IN PART** and **DENIED IN PART.**

2. The motion should be granted as follows:

    a. Dale Gagner should be found to be in civil contempt for violating the 2008 Injunction by engaging in prohibited uses of the AWA marks;

    b. Dale Gagner should be ordered to comply with the 2008 Injunction and to immediately cease all prohibited use of the AWA marks; and

---

[3] At the hearing, the Court asked WWE's counsel about possible outcomes should Mr. Gagner fail to comply with a payment plan that was required by the Court. WWE's counsel indicated that some cases have found that a person who fails to comply with a contempt sanction be taken into custody, but WWE did not explicitly make such a request in this case. Therefore, the Court will not make any recommendation regarding arrest or custody.

    c. Dale Gagner should be Ordered to pay a financial sanction of $1,000, representing the portion of Plaintiff's reasonable attorneys' fees incurred in bringing the motion for contempt necessary to coerce Mr. Gagner's future compliance with the 2008 Injunction.

3. The motion should otherwise be denied.

Date: April 12, 2019                         *s/ Katherine Menendez*
                                                            Katherine Menendez
                                                            United States Magistrate Judge